UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

**MARCEEIA S.,**[1]

    **Plaintiff,**

    v.

    Case No. 3:21-cv-0095
    Magistrate Judge Norah McCann King

**COMMISSIONER OF SOCIAL SECURITY,**[2]

    **Defendant.**

## OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the applications of Plaintiff Marceeia S. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq*. Plaintiff appeals from the final decision of the Commissioner of Social Security denying those applications. This matter is now before the Court, with the consent of the parties, *see Joint Consent of the Parties*, ECF No. 5, on *Plaintiff's Statement of Errors*, ECF No. 11, *Defendant's Memorandum in Opposition*, ECF No. 14, *Plaintiff's Reply*, ECF No. 15, and the *Certified Administrative Record*, ECF No. 10. After careful consideration of the entire record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure. For the reasons that follow, the Court grants *Plaintiff's Statement of Errors*, reverses the decision of the Commissioner, and remands the matter to the Commissioner for further proceedings.

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* S.D. Ohio General Order 22-01.

[2] Kilolo Kijakazi is the Acting Commissioner of Social Security. *See* Fed. R. Civ. P. 25(d).

1

I.    **PROCEDURAL HISTORY**

Plaintiff filed applications for disability insurance benefits and supplemental security income on March 9, 2015, alleging that she has been disabled since February 9, 2015, based on both physical and mental impairments. R. 231-37, 238-43.[3] After a hearing held on May 21, 2018, R. 151-52, Administrative Law Judge ("ALJ") Stuart Adkins issued a decision on July 18, 2018, concluding that Plaintiff was not disabled within the meaning of the Social Security Act at any time from February 9, 2015, her alleged disability onset date, through July 18, 2018, the date of that decision. R. 15-32. On Plaintiff's appeal from that decision to this Court, *S[.] v. Commissioner*, 3:19-cv-0317 (S.D. Ohio (Mar. 26, 2020), the Court granted the parties' joint motion to remand. *Id*. On remand, ALJ Adkins held a second hearing on September 16, 2020, at which Plaintiff, who was again represented by counsel, testified, as did a vocational expert. R. 1558-87. In a decision dated December 23, 2020, ALJ Adkins concluded that Plaintiff was not disabled prior to May 16, 2018, but had become disabled on that date and had continued to be disabled through the date of the new decision. R. 1524-44.

Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On March 22, 2022, the case was reassigned to the undersigned. ECF No. 16. The matter is ripe for disposition.

II.    **LEGAL STANDARD**

    A.    **Standard of Review**

In reviewing applications for Social Security disability benefits, "[t]he Commissioner's conclusion will be affirmed absent a determination that the ALJ failed to apply the correct legal

---

[3] References to pages as they appear in the Certified Administrative Record will be cited as "R. __." *See* S.D. Ohio Civ.R. 8.1(d).

2

standard or made fact findings unsupported by substantial evidence in the record." *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). The United States Supreme Court has explained the substantial evidence standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted). In addition, "'[w]here substantial evidence supports the [Commissioner's] determination, it is conclusive, even if substantial evidence also supports the opposite conclusion.'" *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020) (quoting *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990)); *see also Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) ("Therefore, if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'") (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

"Yet, even if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d

3

742, 746 (6th Cir. 2007)). Moreover, an ALJ's findings must not only enjoy substantial support in the record but those findings must also be sufficiently articulated to permit meaningful review of those findings. *Bailey v. Comm'r of Soc. Sec.*, 174 F.3d 428 (Table), 1999 WL 96920, at *4 (6th Cir. Feb. 2, 1999) (The ALJ's decision "must articulate with specificity reasons for the findings and conclusions that he or she makes.") (citing *Hurst v. Sec'y of Health & Human Servs.*, 753 F.2d 517, 519 (6th Cir. 1985)). *See also* SSR 82-62, 1982 WL 31386, at *4 (1982) ("The rationale for a disability decision must be written so that a clear picture of the case can be obtained.").

  **B.**  **Sequential Evaluation Process**

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The claimant bears the burden of proof through step four; at step five, the burden shifts to the Commissioner." *Rabbers*, 582 F.3d at 652 (*citing Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c), 416.920(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at §§ 404.1509, 416.909. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. §§ 404.1520(e), (f), 416.920(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

### III. ALJ DECISION AND APPELLATE ISSUES

The Plaintiff was 39 years old on her alleged disability onset date. R. 31. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between February 9, 2015, her alleged disability onset date, and the date of the decision. R. 1528.

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: occipital neuralgia; migraines; plantar fasciitis; vertigo; fibromyalgia; arthritis; obesity; auto-immune disorder; thoracic/cervical/lumbar degenerative disc disease; pseudoseizures; conversion

5

syndrome; and depression. R. 1528. The ALJ also found that the following diagnosed impairments were not severe: anemia, vitamin D deficiency, acne, eczema, scarring alopecia, thyrotoxicosis, and allergies. R. 1530.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 1535.

At step four, the ALJ found that, prior to May 16, 2018, Plaintiff had the following RFC:

> After careful consideration of the entire record, the undersigned finds that prior to May 16, 2018, the date the claimant became disabled, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) subject to the following limitations: (1) never climbing ladders, ropes, or scaffolds; (2) frequently climbing ramps and stairs, balancing, stooping, kneeling, crouching, and crawling; (3) avoid unprotected heights and dangerous machinery; (4) performing simple, routine tasks; (5) no work at a production rate pace; (6) occasional interaction with supervisors, coworkers and the general public; and (7) occasional changes to a routine work setting defined as 1-2 per week.

R. 1537. The ALJ also found that this RFC did not permit the performance of Plaintiff's past relevant work as a kitchen helper and caretaker. R. 1541.

At step five and relying on the testimony of the vocational expert, the ALJ found that, from Plaintiff's alleged disability onset date through May 16, 2018, a significant number of jobs—*i.e.*, jobs as a housekeeper, merchandise marker, and routing clerk—existed in the national economy and could be performed by Plaintiff. R. 1542.

However, the ALJ then found that, beginning on May 16, 2018, Plaintiff's RFC also included the restriction that she "would be absent 3 days per month." R. 1543. Again relying on the testimony of the vocational expert, the ALJ found that, with that additional limitation, there would be no jobs that exist in significant numbers in the national economy that Plaintiff could perform. R. 1543.

The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the

Social Security Act from February 9, 2015, her alleged disability onset date, until May 16, 2018, but that she became disabled on May 16, 2018, and continued to be disabled through the date of the ALJ's decision. R. 1544.

Plaintiff disagrees with the ALJ's findings and conclusions regarding the period prior to May 16, 2018. She contends that the ALJ erred in his evaluation of the medical opinions of record, in his determination of Plaintiff's RFC for the period prior to May 16, 2018, and in his finding that Plaintiff was not disabled prior to May 16, 2018. *Plaintiff's Statement of Errors,* ECF No. 11; *Plaintiff's Reply Brief*, ECF No. 15. She asks that the decision of the Commissioner be reversed and remanded with directions for the granting of benefits. *Id.* The Acting Commissioner takes the position that her decision regarding that period should be affirmed because the ALJ's decision in that regard correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief,* ECF No. 14.

IV. **RELEVANT EVIDENCE**

As the extensive administrative record—which consists of almost 3,000 pages—documents, Plaintiff has been treated over the years for a number of conditions.

On May 28, 2015, Victoria Brookshire, C.N.P., Plaintiff's treating medical provider during the period at issue in this case, completed a Basic Medical form at the request of the Department of Job and Family Services, R, 341-42, in which she indicated that she has treated Plaintiff for fatigue, dizziness, and pain—conditions that "flare for a few days at a time, unpredictably." R. 341. According to Nurse Brookshire, Plaintiff can lift and carry up to five pounds only occasionally and is "markedly limited" in her abilities to push/pull, bend, reach,

handle, and engage in repetitive foot movements. R. 342. "On days that she is having symptoms [she has] very limited ability to move around, grip, lift, stand, walk. *Id*.

In May 2015, Amita Oza, M.D., performed a consultative physical examination of Plaintiff at the request of the state agency, R. 329-35, and reported that her examination "was entirely within normal limits." R. 330. According to Dr. Oza, Plaintiff "has probably fibromyalgia or psychiatric problem." *Id*.

Gordon Harris, Ph.D., conducted a consultative psychological examination of Plaintiff on behalf of the state agency on June 10, 2015. R. 344. Plaintiff presented with claims of physical and psychological impairments "which fit no pattern." R. 348. Dr. Harris noted that Plaintiff's affect was bright and she exhibited no difficulty with her memory. *Id*. Dr. Harris noted no difficulty in understanding, remembering, or carrying out instructions. *Id*. Plaintiff did not exhibit difficulties in maintaining attention or concentration. *Id*. Dr. Harris diagnosed "Factious [sic] Disorder" and opined that Plaintiff's apparent personality disorder would likely cause difficulty in a work environment, and would manifest "to great extent" when she is under pressure in a work environment. *Id*.

Plaintiff has been referred by Nurse Brookshire to neurological consultations for "seizure like spells and shaking." R. 850. A January 2015 neurological evaluation by Alan K. Jacobs, M.D., reflected complaints of dizziness, numbness, tremors, pain, headaches, weakness and memory problems, R. 320, although Plaintiff's neurological examination was unremarkable. *Id.*

In November 2015, Barbara L. Phillips, M.D., performed another neurological consultation upon referral from Plaintiff's treating provider. R. 845-58. Plaintiff complained of, *inter alia*, headaches. R. 847. A CT scan of the brain was normal. R. 849. "[N]o abnormalities of imaging [ ] support history of strokes and TIAs. Her symptoms are not consistent with

8

epileptic seizures." R. 849. At a follow-up examination in June 2016, Plaintiff did not complain of headaches, R. 852, and Dr. Phillips again saw no evidence of underlying epilepsy. R. 854. An evaluation of neuromuscular concerns was negative. R. 857.

Robert N. Basil, Psy.D., has provided psychological treatment to Plaintiff "on a regular basis," R. 921, since September 2014, R. 336, 920. *See also* R. 938 (Reporting that Plaintiff meets with Dr. Basil one to three times per month "depending on symptoms"). On March 20, 2015, Dr. Basil reported to the state agency that Plaintiff's functioning is "variable." R. 336-37. She is "anxious, paranoid at times, and she fights depression." R. 336. In January 2017, Dr. Basil characterized Plaintiff's conditions as "very unusual." R. 902. In February 2017, Dr. Basil completed a mental impairment questionnaire, R. 938-45, in which he indicated that Plaintiff's symptoms "are complex and variable." R. 939. "There are several possible diagnoses, and she could have all of them. They include a rare form of narcolepsy, PTSD, disassociative [sic] disorder and/or conversion disorder. She has a long history of working hard to support her deaf son, so malingering is not present." R. 939. Dr. Basil identified a number of signs and symptoms, R. 938, and opined that Plaintiff has "extreme" limitations in her activities of daily living, and in her abilities to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances. R. 940. Plaintiff has "marked" or "serious" limitations in most other functional areas. R. 40-41.

On May 15, 2018, Dr. Basil completed a narrative psychological evaluation of Plaintiff, including an extensive history, at the request of her counsel. R. 1446-57. Dr. Basil diagnosed a mood disorder due to physical conditions, with depression, R. 1452. *See also* R. 1448 (Plaintiff's "medical conditions have had a psychological effect on her over the years."), R. 1449 ("Her physical symptoms have had psychological effects on her mood but also cognitively on her

9

concentration, attending, and on her immediate and short term memory, and at times on her long term memory retrieval.").

Plaintiff was involved in a "minor" motor vehicle accident on May 16, 2018, R. 1468, during which she "[d]id not hit head or loose [sic] consciousness," but complained of facial numbness. R. 1458, 1468. An MRI of the brain was normal, R. 1465, and an MRI and CT scan of the cervical spine revealed degenerative changes. R. 1466, 1470. She was discharged with a diagnosis of "[a]cute nonintractable headache, unspecified headache type." R. 1492.

Plaintiff followed up the next day with Nurse Brookshire for complaints of headache and associated nausea. R. 1510, 1512. Nurse Brookshire initially diagnosed strain of the neck muscle. R. 1513. In December 2018, Plaintiff was referred to another neurological consult for increased neuropathy symptoms in her hands and feet. R. 2001. That referral resulted in a diagnosis of occipital neuralgia. *See* R. 1992.

Beginning in March 2019, Plaintiff has undergone injections for her left occipital neuralgia. *See, e.g.,* 1867, 2187. The injections "last[ ] about two months with good result." *Id*.

During a December 2019 consultative neurological examination by Zelijka Chobanov, M.D., Plaintiff complained of a "lifelong history of headaches." R. 2042, 2045, 2053. "They are bilateral frontotemporal pressure in nature although sometimes can involve the entire head." R. 2042, 2045. Dr. Chobanov diagnosed intractable headaches, unspecified chronicity pattern, unspecified headache type, and commented that Plaintiff "most likely has [ ] migraine headaches complicated with neurological breakthrough symptoms." R. 2045.

Plaintiff testified at the most recent administrative hearing that the pain from her occipital neuralgia "comes and goes." R. 1570. She described the pain caused by the condition as "electrical sparks" that radiate from the back of her head. R. 1569. "Sometimes I can have it like

four or five times a day and then I can go a few days and not have it and then it'll, you know, strike again." R. 1570. Injections help for approximately 30 days. R. 1569. She also experiences migraine headaches, which sometimes last for days, "at least 12 days a month." R. 1571-72. When she gets a headache, she covers her eyes and sits in a dark, quiet room. R. 1573.

The vocational expert testified that, if a claimant were absent three days per month, "there would be no competitive jobs." R. 1583.

V. DISCUSSION

Plaintiff contends, *inter alia*, that the ALJ's determination that her disability arose following the May 16, 2016, motor vehicle accident, and not as the result of her long-term impairments, is not supported by substantial evidence and is arbitrary and unreasonable. *Plaintiff's Statement of Errors*, ECF No. 11, PageID# 3028; *Plaintiff's Reply*, ECF No. 15, PageID# 3059-10. This Court concludes that the ALJ failed to fully consider evidence relating to Plaintiff's history of headaches and the date of onset of her diagnosed migraines.

The ALJ found that Plaintiff became disabled on May 16, 2018, because of her occipital neuralgia, increased neck pain, and headaches, which the ALJ attributed to the May 16, 2016, car accident. R. 1543. Yet, the ALJ also found that Plaintiff has had the severe impairments of, *inter alia*, "occipital neuralgia, [and] migraines" "[s]ince the alleged onset date of disability, February 9, 2015." R. 1528. Moreover, the ALJ appears to have overlooked evidence of headaches during the period prior to May 16, 2018. For example, during his January 2015 neurological examination of Plaintiff, Dr. Jacobs noted complaints of headaches, R. 320, and Dr. Phillips also noted Plaintiff's complaint of headaches during her November 2015 neurological examination, R. 847. Additionally, Plaintiff reported a "lifelong history of headaches" during a December 2019 consultative neurological examination by Dr. Chobanov, who opined that Plaintiff "most

11

likely has [ ] migraine headaches complicated with neurological breakthrough symptoms." R. 2042, 2045, 2053. Even assuming that Plaintiff's occipital neuralgia arose only as a result of the May 16, 2018, car accident, the diagnosis of that condition was not determinative of a diagnosis of migraine headaches, nor was that diagnosis determinative of the date of onset of Plaintiff's migraines.

Under these circumstances, the Court concludes that the decision of the ALJ is not supported by substantial evidence. The decision of the Commissioner must therefore be reversed.

## VI. REMAND FOR FURTHER PROCEEDINGS

Plaintiff asks that the Court remand the matter to the Commissioner with directions for the granting of benefits for the period from February 9, 2015, Plaintiff's alleged disability onset date, through May 16, 2018, the established date of disability. "If a court determines that substantial evidence does not support the [Commissioner's] decision, the court can reverse the decision and immediately award benefits only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher v. Sec'y of Health and Human Servs.,* 17 F.3d 171, 176 (6th Cir.1994). Otherwise, the court should remand to the Commissioner for further consideration.

Here, the Court cannot conclude that the record establishes Plaintiff's entitlement to benefits. Although the ALJ failed to properly consider evidence of headaches and the date of onset of Plaintiff's diagnosed migraines, the record does not clearly establish that Plaintiff is entitled to benefits on that basis for the period prior to May 16, 2018. The Court will therefore remand the action with directions for further consideration of that issue.

**WHEREUPON**, the Court **GRANTS** *Plaintiff's Statement of Errors*, ECF No. 11, **REVERSES** the decision of the Commissioner, and **REMANDS** the matter to the Commissioner for further proceedings.

The Clerk is **DIRECTED** to enter **FINAL JUDGMENT** pursuant to Sentence 4 of 42 U.S.C. § 405(g).

Date: February 27, 2023         *s/Norah McCann King*
                                                    NORAH McCANN KING
                                          UNITED STATES MAGISTRATE JUDGE